Good morning, your honors. James Kester for Appellant April Pitts. I'd like to reserve two minutes for rebuttal if I may. Sure, of course. The first thing I'd just like to start with is that clearly the Strickland standard requires the defense attorney to do reasonable pre-trial investigation and his strategy then has to follow that investigation. Clearly in this case, by his own admissions, a defense attorney did virtually no investigation, even to the extent of not assigning a defense investigator to the case. And the reason this is a problem is that going into the case, he understood that. He also understood going into the case that there was substantial evidence of a viable third-party defendant who he knew from the police reports that there was evidence that this woman was absolutely there through the statement of Coca Baker, which was in his pre-trial packet from the DA's office. He knew that Coca Baker would say that Williams resembled April Pitts and he also knew that there was a substantial issue regarding was she the shooter. And that's what this is all about. Not whether or not she was an aid or better to the robbery, but whether or not she was the actual shooter. Counsel, let's assume that defense counsel in this case had actually done what you asked her to do and managed to track down Ms. Williams. Why would we think Ms. Williams would be available to testify as a witness in the case? Well, she may not have been available to testify as a witness. However, with the evidence that he had that she was similar to Pitts, he could have brought her in and just demonstratively presented her to the jurors physically for the jurors to make an evaluation of how similar Williams was to Pitts. So that's the first thing. Also, assuming that she, and I have no doubt that she would not have testified, but just bringing her in was ripe with exculpatory considerations for Ms. Pitts. But if he brings her in then isn't there a risk that the prosecution would not make the deal to exclude the Pitts confession? Well, the deal, first of all, that would be speculative. The deal between, there was evidence certainly of the deal made between the prosecutor and defense attorney that if the defense attorney, and this was the deal, you don't bring in your identification expert, I won't bring in Ms. Pitts' confession. And so that deal does not reasonably preclude defense attorney from putting on as full a third-party culpability case. But we have to think if the defense puts on a case that Ms. Williams was the one who did it and somehow gets her into court or photographed, if I'm prosecuting the case, I'm putting the confession of Ms. Pitts in for sure. Well, I absolutely appreciate that, but that's not the deal that they made. But even assuming the ameliorating context of not putting on Ms. Pitts' confession, the jurors already had two pages of opening arguments that Ms. Pitts confessed and that she confessed in order to save Ms. Williams from having to go to jail. Let me understand this one. As I'm trying to figure out the lawyer strategy or non-strategy, the lawyer representing Ms. Pitts, this deal doesn't happen until they're in the middle of trial. Correct. So his investigation strategy and his initial strategy in terms of what he's going to put on at trial, that's all done without the deal in mind at all. Correct. He's just looking at a trial in which this confession is going to come in. Correct. Can you enlighten me? Maybe you can, maybe you can't. Why is the prosecutor willing to make the deal? That confession is just a killer. Why is the prosecutor afraid of a third-party culpability defense and the experts' opinions? Generally, the experts we know are going to testify in terms of this case in all the problems with the case. This is not supposed to happen that way. This was a cross-racial identification. Bad for the prosecutor. This was a shooting that happened very quickly, probably within less than 10 or 20 seconds in a darkened space, although there was a substantial amount of light. 1130 at night or whatever. So the prosecutor easily could have evaluated the case and said, the defense attorney has already told the jurors that there's been a confession. I really don't need to bring that in. Notwithstanding, the jurors are going to be instructed not to consider argument, but clearly something, a confession is discussed in full and the jurors can't put that out of their mind. So weighing the values, the prosecutor could easily have said, you know, I'm not losing anything by losing the confession. I'm gaining a whole lot by not having the identification be cut down. Let's assume that Ms. Pitt's lawyer either had Ms. Williams, which I think is unlikely, or had a picture of Ms. Williams. Now, I've read the lawyer's testimony within the space of what appears like 10 seconds. He says, I had a picture, I didn't have a picture. Who knows whether he had a picture? But let's assume for a moment that he had the picture. Okay, but let me just correct you a little bit on that. That happened in one part of his testimony. A court appearance later, he was put back on the point about that. And then he said unequivocally, no, I don't have a picture of Williams. I don't believe I ever did. So there's, he had a chance over a couple of days to think about it. And then unequivocally said, I didn't have a picture. I don't think I ever saw one. So just so that's clear. Yeah, well, there's not that it's not as clear, but well, you're stating very clearly what he said. I appreciate that. But it doesn't make it still doesn't make it very clear to me whether he did or he didn't. But I appreciate that he said what he said. But he says, I didn't give I didn't put the picture on because I'll put it in front of the witness because I thought Miss Schwartz wouldn't she would just double down on the identification and I wouldn't help me and it might hurt is is that assuming he had the picture. Assuming he made a decision not to do it on the ground that he just stated, is that lawyerly judgment to which we must defer? In terms of a factual finding, you would have to defer to if you don't believe that there is substantial evidence, clear and convincing evidence that he didn't have a picture, the standard for that factual finding, you would have to find that there was not clear and convincing evidence that he didn't have a picture. He didn't have the photograph. And in that respect, you may have to defer. But the equally important issue has to be that if you take the state court opinion, which was clearly contrary to the Strickland standard, when the state court absolutely articulated a post hoc justification for defense attorney's strategy. To the extent that obviously, you brought it up yourself, that the attorney could not have known that they were not going to bring in the confession prior to his investigation. So that actually reasonably takes it out of the AEDPA evaluation and you could look at that, I believe, through a de novo review without the AEDPA downgrading. Can I ask you about the taxi driver? He did not do any research to try and locate the taxi driver. According to the confession, Ms. Pitts takes the taxi and pays with the credit card stolen from Ms. Schwartz. According to her later story, she takes a taxi. They then wait at the house for Williams to show up for about 45 minutes, at which point Williams shows up and Williams has the credit card from the robbery victim. Now, is there some reason to fault him for not trying to find the taxi driver? No. That would be, in my opinion, that would be a reasonable strategy, even on minimal investigation, because there is always the danger that the taxi driver, evidence that she had Williams' credit card, ties her to the robbery. It doesn't necessarily tie her to the shooting part of the robbery. But I would not say that that was, under the facts of this case, a completely unreasonable investigatory strategy. So even if the second story turns out to be true, that is to say that Williams shows up with the credit card, even then you might not want that in? Correct. However, if Williams shows up with the credit card, that would have been support, substantial support for Pitts' story. Well, that's why I'm asking the question, because it seems to me that if Pitts' second story, that is to say the story she says after she's finished with the confession, she says that confession is bogus, that one ties Williams, that makes Williams into the shooter, because when she shows up at the house she doesn't have the credit card. Absolutely. So let me ask you again, do you fault the lawyer for not investigating to try and find the taxi driver to confirm the story that Pitts tells the second time? Yes, understanding that part of the question, yes, he should have investigated the taxi driver. It's much like the situation in the Whedon case, that in order for him to have discounted that theory, or discounted the theory that getting the taxi driver is bad for Pitts, he would have had to have known what the taxi driver really has to say. And again, that's a strategic choice that really was made without investigation, and it's investigation that could not have hurt Pitts. What happens if, you are being taken over time, he finds the taxi driver, and the taxi driver says, oh yeah, I remember, Ms. Pitts, your client, got in the car, and when we got to the house she paid with the credit card. What does he do with that information? Can he just keep his mouth shut and say to the taxi driver, thank you very much, thank you for your time, here's a hundred bucks, please go away. Absolutely, and that was discussed in a number of federal habeas cases on AEDPA standards. So yes, that investigation could not have hurt Pitts. And then he just hopes the prosecutor doesn't do the same investigation. Yeah, but the prosecutor does his own investigation no matter what he does. Right. And so there's no strategic advantage for him actually not to have investigated the taxi driver. Let's hear from the other side, and we'll give you a little time to respond. May it please the Court. Toni Esteville, Deputy Attorney General for Respondent. Petitioner's claim fails on prejudice. If her trial attorney had done anything other than rely on the state of the evidence, her confession would have come in, and the jury would have heard for themselves. Petitioners say that it was her, and not Anna Williams, who took a gun, walked up to Rosario Schwartz, and demanded her purse. Once that confession comes in, petitioner's misidentification defense doesn't really have anywhere to go. And there's no version of that defense, whether it's straight. But the deal was if you put on the expert, I'm going to bring in the confession. The deal wasn't if you show a picture of Ms. Williams. As far as I can tell, if you'd shown a picture of Ms. Williams, had he had it, the confession would have stayed out. The deal was keep your darned expert off the stand. The deal was bigger than that, and I'm going to give the Court the citation. It's on page 885 of the supplemental excerpts. Okay, hang on a second. I brought some down. Okay. So what is it? Page 885. Of supplemental? Yes. No, I don't have it. Okay. I was going to read it. You can read it. Yeah. The question, this is about the motion for a new trial. Well, couldn't you have simply brought to the stand the owner of the car who told the police that she gave the car to Anna Williams and had her authenticate the photograph of Anna Williams and presented to the jury that most of the items found in the car belonged to Anna Williams and thereby shown that Anna Williams could have perpetrated this crime? Answer, sure, but then I wouldn't have been relying on the state of the evidence, and the people would have brought in the confession, which is just what we talked about. And then with regard to the cab? But that, you see, that's his testimony later about what the deal was. Yes. When he's in court describing the deal, that's not the deal that he describes. The deal that he describes is if I don't put on my expert, then you don't put in. So the deal that he described in open court was not the deal that he describes later on in his testimony. He didn't mention that part of it, but I think in the context of when he said it at the time, that was in the prosecution's case-in-chief. And so when the confession would have come in, it would have come in on rebuttal. When he tries to use that photo, when he tries to put in that third-party- No, you're not taking my point. When we're actually in trial and Ms. Pitt's lawyer describes in open court on the record what the deal is, the deal he describes is the confession won't come in if I don't put on the stand my expert on cross-racial identification. He doesn't say the deal is anything I do to show that somebody else might have been the person will mean the confession can come in. Yes, Your Honor, I agree. That's what he said at the time. So I'm supposed to trust what he says later on when he's defending himself rather than what he says to the judge in the courtroom at the time of trial? I think you can believe that. But again, I think the scope of that agreement has to be taken into context. And the context was at that point, you're still in the prosecution's case-in-chief. So I'm saying that when he's talking about it, they're talking about the confession coming in at that point in the prosecution's case-in-chief. They hadn't rested yet. No, I understand that. But I'm trying to figure out what the deal was, and I've been puzzling about that throughout this whole case because it kind of wanders around. What you're saying is that the deal was only as to the prosecution's case-in-chief and didn't apply to any of the rebuttal? I'm sorry? You're talking about the rebuttal? I think, if I understand the question correctly, I think you're saying that the rebuttal was still a possibility. Yes. That there was still the chance that if this idea of introducing that someone else committed the crime was out there, the rebuttal case was live and well, and that the deal did not prohibit him, the prosecutor, from introducing a rebuttal case. Yes, Your Honor, and that's my point. It only went to the agreement, as it was articulated by trial counsel at the time, only went to the case-in-chief. It did not preclude the prosecution from bringing that in on rebuttal. And even after the statement that Judge Fletcher mentions, they, both the prosecutor and the defense attorney, continue to talk about whether they're going to bring in the confession, whether they're going to bring in the expert. That was still an open question, and it wasn't until the prosecution rested that that part of it was done. But even after that, defense counsel says, let me talk to my client. Maybe we might bring in the expert witness. So it's still an open point. It's still an open issue at that point. But once the prosecution rests, that's the end of that. And then once the defense gets up and he talks to his client, he says, okay, I'm going to rest. And then that's when the deal is done. And it wasn't just on the one time that he said he had to rely on the evidence. Again, it's in the motion for new trial, but he mentioned it again with regard to the cab, and that's on 696, about not bringing in evidence about the cab. That would also allow the prosecutor to bring in the confession or rebuttal. Okay. That's on 696. So, again, the overarching reason why petitioner's claims fail on prejudice is because the confession would have come in, if petitioner had tried to bring in any third-party culpability evidence. So what do you do with the argument advanced by your adversary that the jury already knew about the confession because the confession had been admitted to and, at least in general terms, been described in Ms. Pitt's opening statement? Right. The jury was instructed before opening statements not to consider anything the attorneys say as evidence. Before, and I'm sure the court's familiar with that, and also before trial counsel gave his argument, he again stressed this is not evidence. And in terms of prejudice. But every practicing lawyer knows, you know, you ring the bell and you try to unring it and, yeah, okay. I understand. But on prejudice, Strickland talks about on the reasonable probability that you're not going to – it's not proper to assume that the jury's going to disregard their instructions. You can't ask – you can't premise that prejudice finding on them disregarding that and then, you know, taking what counsel said in opening argument, opening statement to, you know, against petitioner. Okay. Okay. Well, I might also say, and this is something in your favor rather than a hostile comment, the reference to the confession is pretty anodyne in the opening statement. The confession itself is pretty damning. Yes, Your Honor, and I was going to – yes, it's different to reference the confession. She confessed, and then he goes on and explained. But it's different hearing her confession, as I'm sure the court saw. It's very long, and she very clearly says, I took the gun. I walked up to Schwartz and I demanded the purse. The gun went off. And she says, as part of the confession, and later on I took the taxi and I used the victim's credit card to pay for the taxi. I mean, it's a pretty damning confession. It is, and then her boyfriend used the card. I mean, yes, there's a bunch of things in that confession. I think there's even a debate. She describes a debate beforehand. I don't need a gun. Yes, you do. Don't worry. Right. Right. I mean, she clearly contemplated before it happened and then took the gun. On petitioner's individual IAC claims with regard to prejudice, I think the court touched on that before. With regard to trying to find Williams, there's nothing that shows that she was willing, available, and would have waived her Fifth Amendment rights and would have testified. And when you're looking at, I suppose counsel said, if he had found her, which, again, there's no evidence of, that she could have displayed the photo or displayed Williams. But, again, that doesn't really carry much weight when you've got that confession in evidence. And then with regard to looking at the photo, counsel already believed that petitioner Ann Williams looked similar. He didn't need to look at the photo to make that determination. He knew that when he made his strategic decision at trial to rest on the state of the evidence. Well, he'd been told they looked similar. But I gather he'd not at that point. Well, I don't know whether he'd seen the picture or not. I guess we're back to that point. But he said, assuming he had had the picture, he wouldn't have used it and so on. And so, again, we're looking mainly to prejudice because it can't be based on speculation. It has to be some reliable evidence, and petitioner doesn't have any of that with that confession coming in if they try to bring in any third-party culpability evidence. Thank you, Your Honor. Thank you. Now, we took you over time, but would you please put a minute on the clock? And because the confession and whether that would have come in seems to be a substantial issue, let me first of all just quote what was the counsel represented to the court  And the counsel said, quote, Subsequent to the court making this ruling, I confirmed with the people that they would not be offering the tape, the confession, the statement of my client, if Dr. Fisher did not testify. If my expert did not testify, the people would call one more witness and then rest. That's the basis of that deal. And to the extent that if he had then started pushing on a third-party culpability defense without calling Pitts to testify, the court would reasonably had an opportunity to say, No, here's the deal. This is the deal you made, and this is the deal you're going to have to stick to. And so that confession, under those circumstances, unless Pitts testified or unless Dr. Fraser, the eyewitness expert testified, that confession by their deal would not have come in. And so I would just like to... And the one other thing in terms of speculating as to what the trial would have been or what the prosecution would have done in a rebuttal, that was discussed in, I think, the Browning case and the Whedon case, that you can't speculate as to... You can take the evidence that may have been available at trial from the defense side and factor that into your evaluation, but it's unfair to speculate what the prosecutor would have done to rebut the evidence that it reasonably would have come in had there been reasonable investigation. And that's me. Thank you very much. Okay, thank you. The case of Pitts v. Johnson is submitted for decision. Thank both sides for their good arguments.
judges: W. Fletcher, Owens, Moskowitz